**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| United States of America,<br><br>               Plaintiff,<br><br>    v.<br><br>Alamance County, *et al.*;<br><br>               Defendants. | No. 11-cv-507<br><br>UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT |

## INTRODUCTION

This lawsuit presents a pure question of law: whether North Carolina Rule of Professional Conduct 4.2 ("Rule 4.2"), adopted by this Court in Local Rule 83.10e, permits attorneys for the United States to interview current and former employees[1] of the Alamance County Sheriff's Office ("ACSO") outside the presence of counsel for Alamance County and Sheriff Johnson ("Defendants"). The United States respectfully asks this Court to grant its Motion for Summary Judgment because the material facts are undisputed and the United States is entitled to judgment as a matter of law.

First, this case is ripe for summary disposition because there is no genuine dispute as to any material fact: (1) the United States is authorized to investigate allegations of ACSO's discriminatory policing and unconstitutional searches and seizures pursuant to

---

[1] For purposes of this case, "current or former employees" does not refer to ACSO command staff, i.e., officers with the rank of captain or above. The United States has agreed to conduct all command staff interviews in the presence of Defendants' Counsel. *See* Exs. 1-2 (Trepel Letters, Dec. 29, 2010; Jan. 28, 2011). Additionally, the United States has no objection to conducting interviews in the presence of current or former employees' own counsel.

valid statutory authority; (2) during the course of this investigation, Defendants have repeatedly asserted that Rule 4.2 bars United States Department of Justice ("DOJ") attorneys from interviewing current or former ACSO personnel outside the presence of Defendants' Counsel,[2] and have made these assertions directly to DOJ attorneys, to ACSO employees, and to members of the press; and (3) Defendants have threatened to file disciplinary actions against DOJ attorneys for violating Rule 4.2 by interviewing ACSO employees outside the presence of Defendants' Counsel.

Second, as there are no disputed material facts, the United States is entitled to judgment as a matter of law. Rule 4.2(a) provides that "a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." N.C. R. Prof'l Conduct 4.2(a). Rule 4.2 permits DOJ attorneys to interview ACSO employees outside the presence of Defendants' Counsel for two independent reasons. The United States is "authorized by law" to conduct investigative interviews outside the presence of Defendants' Counsel prior to commencing an enforcement proceeding. Rule 4.2 as interpreted by the case law and explained in Comment 6 to the Rule, makes clear that communications "authorized by law" include the investigative activities of government lawyers "prior to the commencement of criminal or civil enforcement proceedings." N.C. R. Prof'l

---

[2] Mr. Clyde B. Albright, Esq., the Alamance County Attorney, has represented both Defendant Alamance County and Defendant Johnson throughout the United States' investigation.

Conduct cmt. 6.  The United States merits summary judgment for this reason alone.  In addition to this "authorized by law" basis, North Carolina ethics opinions and the courts also firmly establish that, under the circumstances presented here, current and former ACSO personnel are not represented parties to whom Rule 4.2 applies.  The "represented parties" provisions of Rule 4.2 apply only to managerial staff and those that can bind an organizational entity.  *See*  N.C. Rule Prof'l Conduct cmt. 9.  The ACSO personnel the United States seeks to interview are not responsible for the development of ACSO policies or the selection of enforcement priorities.  Thus, they are not represented parties here.

## I.      STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

### A. The United States Is Authorized To Investigate Allegations of ACSO's Discriminatory Practices

On June 2, 2010, the Civil Rights Division of the United States Department of Justice ("DOJ") notified Defendants that DOJ was initiating an investigation pursuant to its authority to enforce three federal civil rights statutes:  Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI"); the Omnibus Crime Control and Safe Streets Act of 1968, 42 U.S.C. § 3789d ("Safe Streets Act"); and the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141 ("Section 14141").  *See* 28 C.F.R. § 0.50; *see also* Exec. Order 12250, 45 Fed. Reg. 72,995 (Nov. 2, 1980) (delegating implementation and enforcement of nondiscrimination laws to the Attorney General). Alamance County and the Sheriff, on behalf of ACSO, receive federal financial assistance from DOJ, subjecting them to the statutory and regulatory requirements of the

Case 1:11-cv-00507-TDS-JEP   Document 19   Filed 07/14/11   Page 3 of 22

Safe Streets Act and Title VI.[3]  *See* Exs. 3-14.  Title VI's implementing regulations require Defendants to permit DOJ access to records, facilities, and sources of information – including persons – relevant to ascertaining compliance with Title VI's prohibition against race, color, and national origin discrimination by programs receiving federal financial assistance.  28 C.F.R. § 42.106(c).  DOJ's investigation centers on allegations that ACSO has engaged in a pattern or practice of discriminatory policing and unconstitutional searches and seizures against Latinos.  Ex. 15 (Preston Letter, June 2, 2010).

### B.  Defendants Repeatedly Assert That Rule 4.2 Bars Interviews of All ACSO Personnel Outside the Presence of Defendants' Counsel and Threaten Disciplinary Action Against DOJ Attorneys

Defendants have repeatedly asserted that DOJ attorneys may not interview ACSO personnel outside the presence of Defendants' Counsel and have threatened disciplinary action for doing so.  Beginning in July 2010, DOJ attorneys sought to interview ACSO personnel, proposing specific dates for such interviews no fewer than four times.  Exs. 1, 2, 16, 17.  (Trepel Letter, Jul. 9, 2010; Saucedo Letter, Oct. 4, 2010; Trepel Letters, Dec. 29, 2010; Jan. 28, 2010).  Defendants refused to schedule interviews in response to every request.  *See* Ex. 18-21 (Albright Letters, Jul. 22, 2010; Oct. 6, 2010; Jan. 7, 2011; Feb. 17, 2011).

Unable to coordinate interviews through Defendants according to its usual investigative practice authorized by law, DOJ attorneys attempted to locate and

---

[3] Section 14141 contains no federal funding requirement.

4

interview current or former ACSO personnel.  Defendants' Counsel reacted by asserting

that he represents all ACSO personnel, current and former.  *See* Ex. 22 (Albright Letter,

Aug. 19, 2010) ("The deputies are also my clients[.]").  He has also asserted that any

contact by DOJ attorneys "with ACSO employees (current or former) without working

through [Defendants' Counsel] would constitute serious misconduct" under Rule 4.2.

Ex. 23 (Albright Letter, Oct. 5, 2010).  Defendants' Counsel re-affirmed this position to

DOJ attorneys most recently during a March 23, 2011, meeting with DOJ attorneys in

Alamance County.

The United States has repeatedly explained to Defendants' Counsel that under

Rule 4.2, the United States is authorized by law to interview ACSO personnel outside

the presence of Defendants' Counsel.  *See* Exs. 1, 24-26 (Trepel Letter, Aug. 18, 2010;

Saucedo Letter, Aug. 26, 2010; Preston Letter, Oct. 28, 2010; Trepel Letter, Dec. 29,

2010).  Despite these efforts, Defendants' Counsel has not wavered in his position that

Rule 4.2 obligates DOJ attorneys to conduct all interviews of current and former ACSO

personnel in his presence.  *See, e.g.*, Exs. 22-23 (Albright Letters Aug. 19, 2010; Oct. 5,

2010).  Indeed, Defendant Johnson admits in his Answer to the United States' Complaint

that he presently contends Rule 4.2 "prohibits contact with current deputies of this

Defendant without counsel being present."  Def. Johnson's Answer, ¶ 5, ECF No. 16.

### C.    Defendants Have Issued Numerous Public Statements Claiming that DOJ Lacks Authority To Interview ACSO Personnel

In addition to issuing their objections directly to DOJ attorneys, Defendants have

repeatedly utilized press interviews and other public statements to claim that ethical rules prohibit the United States from speaking to ACSO personnel outside the presence of Defendants' Counsel.  Shortly after the United States notified Defendants of its investigation, a local newspaper reprinted a July 26, 2010, letter from Defendants' Counsel that directed Sheriff Johnson to "advise all Sheriff Department personnel that if contacted by the DOJ attorneys they should state that all communications must be made in the presence of and by agreement with the County Attorney [Defendants' Counsel]." Ex. 27 (Tomas Murawski, *County Attorney:  No Deputy Should Talk to Justice Dept. Lawyers Without Him Present*, The Alamance News, July 29, 2010, at 1A); *see also* Ex. 28 (Albright Letter, Jul. 26, 2010).  The Burlington Times-News similarly reported that "[l]ike other attorneys, Justice lawyers must follow ethical rules that prohibit them from speaking to those who are represented by another attorney, Albright [Defendants' Counsel] said."  Ex. 29 (Robert Boyer, *County Urged To Cooperate with Probe*, The Burlington Times-News, Aug. 17, 2010, *available at* www.thetimesnews.com/news/county-36154-urged-alamance.html).

### D. Interviews Outside the Presence of Defendants' Counsel Are Essential to the United States' Investigation

Interviews conducted outside the presence of Defendants' Counsel are essential to the United States' ability to gather accurate information about allegations of discriminatory policing at ACSO.  Defendants' persistent refusal to allow such interviews has impeded the United States' investigation.  Current and former ACSO officers have

informed the United States that they are afraid to speak freely in the presence of Defendants' Counsel because the officers believe they will lose their jobs or otherwise face retaliation. Ex. 30 (Menschel Decl. ¶¶ 14-17); Ex. 31 (Rodriguez Decl. ¶¶ 8-9). Those officers who have agreed to speak with the United States have done so only after taking significant steps to ensure the officers' confidentiality, such as arranging to meet late at night or in out-of-the-way locations. Ex. 31 (Rodriguez Decl. ¶ 7).

## II.   DISCUSSION

Summary judgment is appropriate where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008). The nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Othentec Ltd* ., 526 F.3d at 140 (citing *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). "Rather, a nonmoving party must produce some evidence (more than a 'scintilla') 'upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'" *Id.* at 140 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Federal Rule of Civil Procedure 56(b) provides that "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."

Defendants' refusal to permit interviews outside the presence of Defendants' Counsel impedes the United States' civil rights investigation by restricting access to an important source of information about ACSO's alleged discriminatory policing practices

7

and places the DOJ attorneys at risk of possible disciplinary action. A declaratory judgment action is the appropriate vehicle for resolving the dispute over the reach of Rule 4.2. Defendants' repeated refusal to allow the United States to interview ACSO personnel outside the presence of Defendants' Counsel demonstrates that an actual controversy exists between the parties. There is likewise no question that this Court has an independent basis for jurisdiction over the parties' dispute or that a declaration from this Court will serve the useful purposes of clarifying the parties' rights and obligations and allowing the United States' civil rights investigation to proceed.

### A. The United States Is Authorized by Law To Interview ACSO Officers

DOJ attorneys representing the United States are "authorized by law" to interview ACSO personnel outside the presence of Defendants' Counsel prior to commencing a civil enforcement action. Rule 4.2(a) provides an exception to the prohibition on communications with represented parties where a lawyer "is authorized . . . by law or a court order." Comment 6 to Rule 4.2 explains that "[c]ommunications authorized by law may also include investigative activities of lawyers representing governmental entities, directly or through investigative agents, prior to the commencement of criminal or civil enforcement proceedings."

Courts consistently apply this rule to allow government attorneys and investigators to contact represented parties before initiating enforcement proceedings – even though such cases most often arise in the criminal context, where the defendant's interest in the presence of counsel is even stronger than in the civil context. Indeed,

8

federal courts of appeal have unanimously found that pre-enforcement interviews outside the presence of counsel in criminal proceedings do not implicate Rule 4.2.  *See United States v. Balter*, 91 F.3d 427, 436 (3d Cir. 1996); *United States v. Powe*, 9 F.3d 68, 69 (9th Cir. 1993);  *United States v. Heinz*, 983 F.2d 609, 613 (5th Cir. 1993); *United States v. Ryans*, 903 F.2d 731, 740 (10th Cir. 1990); *United States v. Sutton*, 801 F.2d 1346, 1366 (D.C. Cir. 1986); *United States v. Dobbs*, 711 F.2d 84, 86 (8th Cir. 1983); *United States v. Joseph Binder Schweizer Emblem Co.*, 167 F. Supp. 2d 862, 866 (E.D.N.C. 2001); *see also United States v. Worthington*, No. 89-5417, 911 F.2d 726, 1990 WL 116618, at *4 (4th Cir. Oct. 12, 1990) (use of informants by government prosecutors in pre-indictment, non-custodial setting was within North Carolina's "authorized by law" exception).

The same principle applies with even greater force in the civil context.  As part of its civil rights investigation, the United States seeks to interview current and former ACSO employees "prior to the commencement of . . . civil enforcement proceedings." N.C. R. Prof'l Conduct 4.2, cmt. 6.  The plain language of Comment 6 and the weight of precedent demonstrate that Rule 4.2 poses no obstacle to such interviews.

Indeed, courts have similarly held that Rule 4.2's ethical restrictions do not bind private plaintiffs who have not yet filed suit, even though they are not conducting investigations authorized by federal statute, as the United States is here.  To find otherwise, especially when dealing with a corporate or organizational entity such as ACSO, would place the relevant facts beyond the reach of prospective plaintiffs in civil

litigation. *See Weider Sports Equip. Co. v. Icon Health & Fitness, Inc.*, 912 F. Supp. 502, 508-09 (D. Utah 1996) (holding Rule 4.2 "applicable only after [civil] litigation has been commenced"); *Faragher v. Nat'l R.R. Passenger Corp.*, No. 91-2380, 1992 WL 25729, at *1-2 (E.D. Pa. Feb. 7, 1992). Applying Rule 4.2 prior to the filing of civil litigation "would preclude . . . the gathering of the necessary factual information to determine if a valid claim for relief could be maintained and in its most exaggerated context leave a party without a factual basis to assert an avenue of redress." *Weider Sports*, 912 F. Supp. at 508; *see also Faragher*, 1992 WL 25729, at *2 ("Access to the facts should not be the exclusive province of the defendant nor should [plaintiffs'] investigation be filtered through or controlled by defendant's counsel.").

Indeed, to apply Rule 4.2 to pre-suit investigations would place the Rule's ethical protections in direct conflict with the duties the Federal Rules of Civil Procedure place on a prospective plaintiff's counsel to make a reasonable inquiry into the facts prior to filing a complaint. *See* Fed. R. Civ. P. 11(b); *Kaveney v. Murphy*, 97 F. Supp. 2d 88, 94 (D. Mass. 2000) ("If virtually all the relevant witnesses are employees of the defendant, plaintiff's counsel is limited to only the formal tools of discovery and cannot conduct informal investigation [required by Fed. R. Civ. P. 11] . . . ."); *Weider Sports*, 912 F. Supp. at 508-09; *Faragher*, 1992 WL 25729, at *2. Such an outcome would be even more illogical here, where the United States' pre-suit investigation is authorized by federal statute. This Court should thus affirm the settled principle that Rule 4.2 applies only after a party has concluded its investigation by filing a substantive civil complaint.

10

## B. ACSO Deputies and Sergeants Are Not Represented Parties

Even if Rule 4.2 applied to the DOJ's pre-suit investigative contacts, conducting the proposed interviews outside the presence of Defendants' Counsel is fully consistent with Rule 4.2. Comment 9 to Rule 4.2 explains that individuals are "represented" for purposes of Rule 4.2 only under three circumstances: (1) they "supervise[], direct[], or consult[] with the organization's lawyer concerning the matter"; (2) they have "authority to obligate the organization lawyer with respect to the matter" or their "act or omission in connection with the matter may be imputed to the organization"; or (3) they are "participating or participated substantially in the legal representation of the organization . . . ." N.C. Rule of Prof'l Conduct 4.2 cmt. 9.

This provision applies narrowly. North Carolina 2005 Formal Ethics Opinion 5 states that "Rule 4.2(a) does not restrict access to all employees of the represented organization. Counsel for an organization, be it a corporation or government agency, may not unilaterally claim to represent all of the organization's employees on current or future matters as a strategic maneuver." 2005 N.C. Formal Ethics Op. 5 (Jul. 21, 2006) (citations omitted); *see also* R. Prof'l Conduct 67 (Jul. 14, 1989) (ruling that "an attorney generally may interview a rank and file employee of an adverse corporate party without the knowledge or consent of the corporate party or its counsel"). Accordingly, courts uniformly resist assertions of blanket representation by corporate counsel. *See, e.g.*, *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 913 F. Supp. 1306, 1317 (N.D. Iowa 1996) (noting that acceptance of an "automatic representation" rule for corporate employees

11

would "impede the course of investigation" and allow "coercive conduct on the part of the employer"); *Carter-Herman v. Philadelphia*, 897 F. Supp. 899, 903 (E.D. Pa. 1995) ("We do not accept the notion that every city employee is automatically a represented party simply by virtue of his or her employment . . . ."). To do otherwise would transform Rule 4.2's ethical protections into a sword to fend off legally authorized investigations, and more broadly, any plaintiff's search for truth. *See United States v. W. Elec. Co.*, No. 82-0192, 1990 WL 39129, at *1 (D.D.C. Feb. 28, 1990).

Contrary to Defendants' blanket assertions of representation, courts consistently find that plaintiffs may contact non-managerial corporate or governmental employees outside the presence of the organization's counsel. *See Terra Int'l*, 913 F. Supp. at 1321; *Carter-Herman*, 897 F. Supp. at 903-04; *Morrison v. Brandeis Univ.*, 125 F.R.D. 14, 18-19 (D. Mass. 1989); *Mompoint v. Lotus Dev. Corp.*, 110 F.R.D. 414, 419 (D. Mass. 1986); *Frey v. Dep't of Health & Hum. Servs.*, 106 F.R.D. 32, 36 (E.D.N.Y. 1985).[4] In particular, the Middle District of North Carolina has concluded that Rule 4.2 does not "prevent[] a party from *interviewing rank and file employees who merely witnessed an event*, even though they relate facts prejudicial to their employer." *McCallum v. CSX Transp., Inc.*, 149 F.R.D. 104, 110 (M.D.N.C. 1993) (emphasis added). In *McCallum*, this Court held that the propriety of communications with

---

[4] Indeed, when the plaintiff is the United States and the corporate party is a government agency, the interest in permitting fact-gathering is even more pronounced since the plaintiff represents the public's interest in the search for truth and law enforcement, and the municipal corporation likewise "has a duty to advance the public's interest in achieving justice, an ultimate obligation that outweighs its narrower interest in prevailing in a law suit." *Frey*, 106 F.R.D. at 37.

12

employees of a corporate party turns on whether the employees' statements can be attributed to the employer as admissions under Federal Rule of Evidence 801(d)(2). The *McCallum* court, however, recognized that statements outside the scope of an employee's agency or employment would not bind an employer, and reasoned that employees who had merely observed an incident or practice could properly "be interviewed as to those matters without constituting employer admissions." *Id.* at 111; *see also* 99 N.C. Formal Ethics Op. 10 (Jul. 21, 2000) (noting that, in the context of criminal investigations, an attorney may question employee witnesses regarding whether they observed others engage in wrongdoing under investigation and whether they were asked or instructed by superiors to engage in wrongdoing).[5]

Applying *McCallum* to a civil rights action against a city, police chief, and individual officers, a federal court recently held that rank and file police officers were not represented parties under Rule 4.2. *Perry v. City of Pontiac*, 254 F.R.D. 309, 311, 314, 317 (E.D. Mich. 2008) (noting that Michigan's Rule 4.2 rule is identical to North

---

[5] While the ethics opinion suggests that a truck driver involved in an accident while driving a company truck would constitute a "represented party" under Rule 4.2, the opinion emphasizes that "[t]his does not mean that informal communication is prohibited with any employee who may make a damaging statement about the corporation that would be admissible in evidence. Rather, the prohibition is limited to informal communications with employees who have the authority to speak for and bind the corporation." In *Perry v. Pontiac*, the federal court similarly explained that a wrecked truck driver would be "represented," but concluded that interviews with rank and file police officers outside the presence of counsel were permissible because they were "[not] likely to generate statements that amount to admissions by the City." *Perry v. City of Pontiac*, 254 F.R.D. 309, 315, 316 (E.D. Mich. 2008). In any event, 99 N.C. Formal Ethics Op. 10 does not address the "authorized by law" provision that is dispositive here.

13

Carolina's). There, in the context of a filed civil lawsuit, the court determined that plaintiffs' counsel did not violate Rule 4.2 by communicating with rank and file officers. Plaintiffs' claims centered on allegations that the police department had a policy or custom of using excessive force against suspects, evidenced by deficient use of force training and an ineffectual disciplinary system for officers. *Id.* at 311-12. Relying on *McCallum*, the court reasoned that "officer discipline, or the lack thereof, is not something that falls within the scope of employment or agency of rank-and-file police officers." *Id.* at 316.

Likewise, ACSO deputies and sergeants do not have responsibility for setting department enforcement priorities, creating policies, or selecting methods of enforcement. *See Carter-Herman*, 897 F. Supp. at 903-04 (concluding that police officers and sergeants were non-managerial positions). These officers may, however, provide relevant information about those same topics. The balance of interests thus weighs strongly in favor of permitting the United States to interview ACSO deputies and sergeants outside the presence of Defendants' Counsel. While the United States could obtain information from these officers during formal discovery, it would do so at a much higher cost to the public. Additionally, where, as here, the officers in question are at-will employees of Defendants, the presence of opposing counsel may "inhibit the free and open discussion" that the United States seeks during investigative interviews. *Morrison*, 125 F.R.D. at 19.

14

## C. Former ACSO Employees Are Not Represented Parties

Defendants' Counsel has improperly asserted blanket representation over former ACSO employees. *See* Ex. 23 (Albright Letter, Oct. 5, 2010). North Carolina ethics opinions and relevant case law firmly establish that Rule 4.2 has no application to former employees. *See* N.C. R. of Prof'l Conduct 4.2 cmt. 9 ("Consent of the organization's lawyer is not required for communication with a former constituent unless the former constituent participated substantially in the legal representation of the organization in the matter."); 97 N.C. Formal Ethics Op. 2 (Jan. 16, 1998); R. Prof'l Conduct 81 (Jan. 12, 1990); *Terra Int'l*, 913 F. Supp. at 1315-16; *Brown*, 148 F.R.D. at 253 (listing cases); *Breedlove v. Tele-Trip Co.*, No. 91-C-5702, 1992 WL 202147, at *1 (N.D. Ill. Aug. 14, 1992).

As the *Breedlove* court noted, "[t]he rule is not intended to prevent a party from discovering potentially prejudicial facts; rather, it is intended to protect the attorney-client relationship of counsel with a corporate client." 1992 WL 202147, at *1. Because former employees are neither parties nor agents of the employer, and are not involved in the corporation's attorney-client relationship, they are beyond the scope of the rule.[6] *Id.* For the same reasons, the United States is authorized to interview former ACSO employees outside the presence of Defendants' Counsel.

---

[6] Of course, the United States will not inquire into any privileged attorney-client communications to which a former employee may be privy. The attorney-client privilege cannot, however, be used to justify an absolute proscription against communications with former employees, including former managerial level employees. *See Terra*, 913 F. Supp. at 1316.

15

**D.     This Court Should Grant Declaratory Relief to the United States**

This Court has jurisdiction to award the United States the declaratory relief it seeks.  The Declaratory Judgment Act provides that when there is "an actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  A federal court has jurisdiction over declaratory judgment proceedings when:  (1) there is an "actual controversy between the parties"; (2) "the court possesses an independent basis for jurisdiction over the parties"; and (3) exercising jurisdiction does not abuse the court's discretion.  *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004) (citing 28 U.S.C. § 2201) (internal quotation marks omitted).  The present dispute satisfies all three elements.

**1.   Undisputed Facts Demonstrate That the Parties' Dispute over Rule 4.2 Is an Actual Controversy**

The undisputed facts demonstrate that the United States and Defendants' dispute is an actual controversy.  Under the Declaratory Judgment Act, an actual controversy exists where "there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks omitted); *see also United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493-94 (4th Cir. 1998) (declaratory judgment actions appropriate where they clarify the legal rights and obligations of the parties involved, and

16

where a judicial declaration may allow a party "to gain relief from the insecurity caused by a potential suit waiting in the wings").

Defendants' conduct before and after the filing of this action demonstrates the immediacy and reality of the controversy. As set forth more fully in Section I, *supra*, Defendants have repeatedly objected to the United States conducting any interviews of ACSO personnel outside the presence of Defendants' Counsel. Defendant Johnson's Answer to the United States' Complaint further confirms the concrete and immediate nature of the controversy. *See* Def. Johnson's Answer, ¶ 5, ECF No. 16 (stating that Defendant Johnson asserts that Rule 4.2 "prohibits contact with current deputies . . . without counsel being present" and "has objected to [the United States attorneys] attempting to contact current deputies in violation of Rule 4.2"). Indeed, Defendants' Counsel has implicitly and explicitly threatened to file suit or disciplinary actions against the DOJ attorneys for violating Rule 4.2 by interviewing ACSO personnel outside his presence. *See* Ex. 23 (Albright Letter, Oct. 5, 2010); Ex. 30 (Menschel Decl. at ¶¶ 8-9, 11-13).

The parties' dispute is thus concretely defined and immediate. Indeed, the parties are presently on a collision course that would require the United States either to modify its investigatory practice and jeopardize its ability to conduct its investigation or rely on Defendants' forbearance. Courts have consistently held that in the context of disputes over ethics rules, a party need not wait until disciplinary or other action has been taken to seek declaratory relief. *See, e.g.*, *Stern v. U.S. Dist. Ct. for Dist. of Mass.*, 214 F.3d 4, 13

17

(1st Cir. 2000) (standing under the Declaratory Judgment Act exists where "the threat of ethics enforcement is genuine [and] compliance costs are real and immediate"); *United States v. Colo. Sup. Ct.*, 87 F.3d 1161, 1165-66 (10th Cir. 1996) (allegations that ethical rules forced federal attorneys to change their investigatory practices constitute actual controversy); *see also ANR Pipeline v. Corp. Comm'n of Okla.*, 860 F.2d 1571, 1578 (10th Cir. 1988) ("Once the gun has been cocked and aimed and the finger is on the trigger, it is not necessary to wait until the bullet strikes to invoke the Declaratory Judgment Act."). The United States need not do so here.

### 2. The Court Possesses an Independent Basis for Jurisdiction

This Court has subject matter jurisdiction over the present dispute. First, this Court has adopted Rule 4.2 as its own standard of professional conduct pursuant to Local Rule 83.10e. *See* Rules of Prac. & Proc. of the United States District Court for the Middle District of North Carolina, Rule 83.10e(b) (Apr. 1, 2011). Federal courts consistently determine that they have jurisdiction to interpret similar rules of professional conduct. *See, e.g.*, *Stern*, 214 F.3d at 10-13 (holding that district court had jurisdiction over declaratory judgment action seeking relief from application of a Massachusetts ethics rule to federal prosecutors); *Colo. Sup. Ct.*, 87 F.3d at 1164-67 (holding that district court had subject matter jurisdiction over suit challenging application of Colorado ethics rules to federal prosecutors); *Baylson v. Disciplinary Bd. of Sup. Ct. of Penn.*, 975 F.2d 102 (3d Cir. 1992) (affirming grant of summary judgment enjoining enforcement of Pennsylvania ethics rule against federal prosecutors). Moreover, the present dispute over

18

the propriety of interviewing ACSO personnel outside the presence of Defendants'
Counsel arises directly from the United States' authority to investigate civil rights
violations conferred by three federal statutes: Title VI, the Safe Streets Act, and Section
14141. This Court thus has subject matter jurisdiction to award the United States the
relief it seeks.

### 3. Declaratory Relief Will Serve a Useful Purpose

Declaratory relief here is useful and efficient. It will clarify the parties'
obligations and relationships to each other, permit the United States' investigation to
proceed without further delay, and establish to all – including potential witnesses – that
the United States' actions are proper. The Fourth Circuit has explained that a district
court "must have 'good reason' for declining to exercise its declaratory judgment
jurisdiction." *Volvo Constr.*, 386 F.3d at 594. Indeed, "a district court is obliged to rule
on the merits of a declaratory judgment action when declaratory relief will serve a useful
purpose in clarifying and settling the legal relations in issue . . . ." *Id.* (internal quotation
marks omitted). Typically "good reason" to decline jurisdiction involves the existence of
parallel state court proceedings, and raises considerations of comity, federalism, and
efficiency. *See, e.g.*, *Mitcheson v. Harris*, 955 F.2d 235, 241 (4th Cir. 1992) (federal
court declined to exercise jurisdiction over declaratory action during pendency of related
state court proceedings). None of these factors is present here. This Court should thus
exercise its jurisdiction to grant summary judgment to the United States and award it the
declaratory relief it seeks.

19

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court

grant its Motion for Summary Judgment.

Respectfully submitted,

RIPLEY RAND
United States Attorney
Middle District of North Carolina

GILL P. BECK
North Carolina Bar Number: 13175
Assistant United States Attorney
Chief, Civil Division
Middle District of North Carolina
P.O. Box 1858
Greensboro, NC  27402
Tel: (336) 333-5351
gill.beck@usdoj.gov

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

ROY L. AUSTIN, JR.
Deputy Assistant Attorney General
Civil Rights Division

JONATHAN M. SMITH
Chief
Special Litigation Section
Civil Rights Division

AVNER M. SHAPIRO
DC Bar Number: 452475
Special Counsel
Special Litigation Section
Civil Rights Division

s/ Samantha K. Trepel
SAMANTHA K. TREPEL
DC Bar Number: 992377

s/ Michael J. Songer
MICHAEL J. SONGER
DC Bar Number: 975029
Trial Attorneys
United States Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, N.W.
Washington, DC  20530
Tel: (202) 514-6255
Fax: (202) 514-4883

20

samantha.trepel@usdoj.gov
michael.songer@usodj.gov

Attorneys for the United States

## CERTIFICATE OF SERVICE

I certify that the foregoing Memorandum of Law in Support of United States' Motion for Summary Judgment was served through the electronic filing service on July 14, 2011, to the following individuals:

Clyde B. Albright
Benjamin C. Pierce
Alamance County Attorney's Office
124 West Elm Street
Graham, NC  27253
clyde.albright@alamance-nc.com
ben.pierce@alamance-nc.com

Attorneys for Defendant Alamance County

S.C. Kitchen
Stark Law Group, PLLC
6011 Farrington Rd., Suite 300
Chapel Hill, NC  27517
chuck@starklawgroup.com

Attorney for Defendant Johnson

s/ Samantha K. Trepel
SAMANTHA K. TREPEL
Attorney for the United States
